DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

```
A. JEFFREY WEISS, d/b/a A.J.     )
  WEISS & ASSOCIATES; & GARRY    )
  GARTEN,                        )
                                 )
              Plaintiff,          )    Civil No. 2008-123
                                 )
         v.                      )
                                 )
JOAN C. OAT,                     )
                                 )
              Defendant.          )
                                 )
                                 )
```

ATTORNEYS:

**A. Jeffrey Weiss**
St. Thomas, U.S.V.I.
  *For the plaintiff A. Jeffrey Weiss d/b/a A.J. Weiss & Associates.*

**Garry Garten**
St. Thomas, U.S.V.I.
  *For the plaintiff Garry Garten.*

**Joan Oat**
St. John, U.S.V.I.
  *Pro Se.*

### MEMORANDUM OPINION

**GÓMEZ, C.J.**

   A trial on this matter was held on May 16, 2011.  The Court, having considered the parties' various pleadings, witness testimony, and the arguments of counsel, now enters Judgment pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 52(a), the Court may enter judgment following a trial without a jury. *See* FED. R. CIV. P. 52(a). In

*Weiss & Garten v. Oat*
Civil No. 2008-123
Judgment
Page 2

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On September 12, 2008, Attorneys Garry Garten ("Garten") and Jeffrey Weiss ("Weiss") filed a two count complaint against Joan Oat ("Oat"). Count One of the complaint asserts an action for debt against Oat for $451,024.61. Count Two of the complaint seeks a declaratory judgment and foreclosure.

Specifically, Garten and Weiss seek $451,024.61 for their representation of Oat in matters concerning Sewer Enterprises, Ltd. and Tradewinds Newspaper. They further seek declarations that they have valid charging liens against the full judgment awarded to Oat in *Joan Oat v. Sewer Enterprises*, Civ. No. 2003/115, on all proceeds received as a result of their representation of Oat, and on Oat's shares or 49% of her minority interest in Sewer Enterprises. They also request a declaration that they have valid retaining liens against Oat's files and records for the matters in which they have represented Oat. Garten and Weiss request foreclosure with respect to all the alleged liens.

Trial in this matter was scheduled for March 21, 2011. On March 10, 2011, Oat filed a motion to participate in the trial

---

making a decision following a bench trial, "the court must find the facts specially and state its conclusions of law separately." *Id.*

[2] To the extent that any finding of fact reflects a legal conclusion, it shall

by telephone.  In order to allow Oat to participate in the trial, in person, the Court rescheduled the trial for May 16, 2011.  Thereafter, Oat filed a second motion to participate by telephone.  On May 13, 2011, the Court held a hearing on the motion to appear telephonically.  At the hearing, Oat informed the Court that she would be unable to be present in person at the trial due to physical conditions.  Instead of allowing Oat to participate by telephone, the Court proposed that Oat participate by video conference from her nearest federal court.  She declined the accommodation.  The Court informed Oat it was disinclined to allow Oat to participate by telephone.  During the conference, Oat waived her right to appear at the trial.

Thereafter, the Court issued an order allowing Oat to appear at the May 16, 2011, trial telephonically.  The Court further ordered each party to file exhibits on the electronic court filing system for Oat's review during the trial. Oat was sent an email of the Court's order.

On May 16, 2011, Oat failed to appear telephonically.  The Court called Oat at a number that the Court previously had used to communicate with her.  The Court also attempted to reach Oat at her daughter's home.  The Court was unable to contact Oat.  After a one hour and fifteen minute delay, the Court began the trial.

The evidence presented at trial established that, on October 1, 2002, Joan C. Oat ("Oat") entered into a contract with plaintiff Attorney Garry Garten ("Garten").  Pursuant to the contract, Garten agreed to represent Oat in various corporate and litigation matters.  The contract was embodied in a retainer agreement and was signed by Oat.  (Pl. Garten Ex. GG01).

The Garten retainer agreement set forth the terms of his representation of Oat, including the fees and costs.  It required payment by Oat for services rendered within thirty (30) days of each bill.  That retainer agreement specifically acknowledged that Garten was taking over representation from another counsel midstream and that the results of the representation may have been hampered by the previous counsel's work.  *Id.*

In October, 2004, Garten informed Oat that he intended to terminate the representation for a raft of reasons. Subsequently, Oat and her family attorney, John Cotter, asked Garten to continue to represent Mrs. Oat. (Pl. Garten Exs. GG06).

At trial, Garten testified that Oat has not paid in full the last three bills sent to Oat.

Those bills are:

    (a)   November 1, 2006 bill in the total amount of $10,937.35, with $10,917.65 in fees and $19.70 of costs (Pl. Garten Ex. GG36A);

    (b)   December 5, 2006 bill in the total amount of $14,021.85, with $14,007.00 in fees and $14.85 of costs (Pl. Garten Ex. GG36.);

    (c)   June 20, 2007 bill which is comprised of two bills dated June 20, 2007 ($3,861.50) and March 27, 2007 ($49,255.47) and in the total amount of $53,116.97 with $51,130.50 in fees and $1,986.87 of costs, including travel costs to try the case in Philadelphia. (Pl. Garten Ex. 39).

Garten further testified that the total outstanding amount Oat owes is $58,076.57. $56,089.50 of that amount was for attorney's fees and $1,987.07 for costs. (Pl. Garten Exs. GG36; GG36A; GG39).

The evidence at trial further established that on or about June 3, 2005, Oat retained A. Jeffrey Weiss, Esq., d/b/a A. J. Weiss & Associates ("Weiss"). (Pl. Weiss Exs. 12(a); 12(b)). Weiss testified at trial that, shortly after being formally retained by Oat, on June 28, 2005, a fire at his office destroyed many of his active files, including the executed retainer agreement with Oat.

Oat retained Weiss as her attorney from June, 2005, up to and throughout 2007. As her attorney, Weiss performed legal services and incurred out-of-pocket costs and expenses on behalf of, and in the course of, his representation of Oat. (Pl. Weiss Exs. 12(a); 12(b)).

During the course of his representation of Oat, Weiss sent monthly bills for services rendered and costs incurred. (Pl. Weiss Exs. 3; 7). As of July 31, 2007, there remained a balance of $331,004.37 due and owing for unpaid legal fees, costs, and expenses as a result of Weiss' representation of Oat. (Pl. Weiss Ex. 3).

After the conclusion of the trial, Oat left a phone message with the courtroom deputy. In her message, Oat reiterated that she had waived her right to appear at the trial.

## II. CONCLUSIONS OF LAW

### A. Breach of Contract:

To establish a breach of contract claim under Virgin Islands law, a plaintiff is required to prove that there was (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages. *Galt Capital, LLP v. Seykota*, Civ. Nos. 2002-63 and 2002-134, 2007 U.S. Dist. LEXIS 92955, at *10 (D.V.I. Dec. 14, 2007) (citing *Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 282 (D.V.I. App. Div. 1997)).

The Court finds that Oat entered into a valid written contract with Garten. The contract contains the terms of the relationship. For example, it includes fixed rates and costs in exchange for services rendered. The contract also includes

express recognition that Garten was taking over representation midstream. The contract contains a signature line, preceded by the words "The Foregoing is Agreed and Accepted." Joan Oat's signature appears on the signature line.

The total outstanding amount owed by Oat to Garten is $56,089.50 for fees and $1,987.07 for costs, excluding interest and fees and costs for collection. Garten's bills were overdue as of July 20, 2007. There was no interest rate specified in Garten's retainer agreement for overdue bills. (Pl. Garten Ex. GG01). Oat's failure to pay her overdue bills constitutes a breach of her agreement.

The Court also finds that Oat entered into a valid contract with Weiss. In lieu of a signed contract, Weiss submitted a fax correspondence transmitting the unexecuted draft of the contract to Oat. (Pl. Weiss Ex. 12a). Weiss testified that the unexecuted retainer agreement was identical to the one executed by Oat.[3] (Trial Tr. at 16). The unexecuted contract contains set

---

[3] Weiss' trial testimony provided, in pertinent part,

> The next exhibit I want to refer to is what's marked Exhibit 12a and that's the faxed copy from my computer file of the fax cover sheet to Mrs. Oat from our office.
>
> . . .
>
> These came from my computer file since the hard copies were destroyed. The next pages of this exhibit are the retainer agreement sent up to Mrs. Oat. The way my firm works is that we have a standard letterhead. We do the documents on word processor and then they're printed on the letterhead which is why there's no letterhead on the copy attached to

*Weiss & Garten v. Oat*
Civil No. 2008-123
Judgment
Page 8

rates and costs and the terms of the relationship.  It states in pertinent part,

> This letter will formalize our prior understandings and agreements with regard to this Firm's representation of you in the various litigation matters you have pending in the District Court of the Virgin Islands and in Superior Court of the Virgin Islands. . . . You agree that you have engaged the services of A.J. Weiss & Associates, Attorneys at Law (the "Firm") to represent you with regard to the above matters, and that you will be responsible for all legal fees and expenses incurred on your behalf by the Firm.

(Pl. Weiss Ex. 12a).

At trial, Weiss testified that he sent a bill of $331,004.37 to Oat, with a demand for payment. He further testified that Oat failed to pay the bill. (Tr. Page 28). Accordingly, there remains a balance due and owing to Weiss for legal work done on behalf of Oat in the amount of $331,004.37 for unpaid legal fees, costs, and expenses as a result of his representation. Oat's failure to pay her outstanding balance

---

> Exhibit 12a.  But this is the standard retainer agreement we have and it sets forth the agreement under which I have with all my clients that we were being engaged by Mrs. Oat to work on various matters that she had in litigation, including matters against the estate of Huldah Sewer, the estate of Llewelyn Sewer who is deceased, Sewer Enterprises, LTD, and other corporate matters regarding her stockholder interest in Sewer enterprises, it specifically says now that mediation with the Sewer defendants have been unsuccessful, it sets forth our hourly billing rate for the associates that I had at the time and other associates. . . .

(Trial Tr. at 16)

constitutes a breach of her agreement.  Further, pursuant to the contract, interest on all amounts remaining unpaid after 30 days accrues at the rate of 18% per annum.

**B. Retaining and Charging Liens:**

Weiss and Garten seek a declaration that they have valid liens as to: (1) the Judgment and attorney's fees and costs awarded to Oat in District Court Civil No. 2003/115; (2) the proceeds received as a result of Weiss and Garten's representation of Oat, including the amounts received as a result of the Marshal's execution; (3) Oat's shares or 49% minority interest in Sewer Enterprises, Ltd.;(4) the files and records for the matters in which Weiss and Garten represented Oat.  They further seek to foreclose on their liens.

"In the absence of local law to the contrary, the Restatement is the authoritative law." *Chase v. Virgin Islands Port Auth.*, 3 F. Supp. 2d 641, 643 (D.V.I. 1998); Virgin Islands Code Ann. tit. 1, § 4.

Section 43 of the Restatement (Third) of the Law Governing Lawyers (2000) states:

> (1)  Except as provided in Subsection (2) or by statute or rule, a lawyer does not acquire a lien entitling the lawyer to retain the client's property in the lawyer's possession in order to secure payment of the lawyer's fees and disbursements. A lawyer may decline to deliver to a client or former client an original or copy of any document prepared by the lawyer or at the lawyer's expense if the client or former client has not paid all fees and

> disbursements due for the lawyer's work in preparing the document and nondelivery would not unreasonably harm the client or former client.
>
> (2) Unless otherwise provided by statute or rule, client and lawyer may agree that the lawyer shall have a security interest in property of the client recovered for the client through the lawyer's efforts, as follows:
>
>> (a) the lawyer may contract in writing with the client for a lien on the proceeds of the representation to secure payment for the lawyer's services and disbursements in that matter;
>>
>> (b) the lien becomes binding on a third party when the party has notice of the lien;
>>
>> (c) the lien applies only to the amount of fees and disbursements claimed reasonably and in good faith for the lawyer's services performed in the representation; and
>>
>> (d) the lawyer may not unreasonably impede the speedy and inexpensive resolution of any dispute concerning those fees and disbursements or the lien.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 (2000).

**1. Charging Liens**:

Comment e of the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 (2000) outlines the requirements for charging liens.  It states in pertinent part,

> Lien statutes and decisions differ in their requirements for making the lien effective against a third party. Two such general requirements apply in the absence of a contrary statutory arrangement.
>
> First, the client and lawyer must contract in writing for the lien. That requirement ensures that the client has notice that the lawyer may detain part of any recovery and an opportunity to bargain for a different result (see § 38, Comment b). The requirement of a writing also permits third parties to verify the lien's existence and provisions. The

> lien contract need not specify the amount of the fee, which is often unknown in advance, and need not use the word "lien." However, it must make clear that the lawyer will be entitled to part of the proceeds of the action to pay the lawyer's fee.
>
> Second, to be enforceable against a third party that person must have been afforded notice of the lien as required by law. Otherwise, that party could not fairly be held liable to the lawyer after making payment directly to the plaintiff (see Restatement Second, Agency § 464, Comment n (notice to opposing party or court)). If there are several third parties, the lien is binding only on those with notice. Absent waiver or estoppel or other law to the contrary, effective notice can be given at any time before the third party makes payment to the client.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 (2000) cmt. e

(2000)

Here, Weiss's representation agreement with Oat states in pertinent part,

> In addition, you hereby consent to the Firm's retaining and charging liens on all files, documents, property, and funds in our possession, and against all amounts that may have been awarded, agreed to by way of settlement, or obtained for or on your behalf, to secure all amounts which may be due and owing as a result of services provided to you by the Firm.

(Pl. Weiss Ex. 12a).

Weiss maintains that following the issuance of the Judgment and attorney's fees in Dist. Ct. Civ. No. 2003/115, Weiss began collection proceedings to enforce the Judgment against Sewer Enterprises. The Court issued a Writ of Execution. Upon execution, Weiss obtained $27,468 from Sewer Enterprises's bank

accounts.[4]  At trial, Weiss testified that the $27,468 is currently held in escrow. (Trial Tr. at 31-32).

Based on the evidence addressed at trial Weiss has a valid attorney's lien on the $27,468.

Garten's contract contains no provision for a contractual charging lien. As such, he does not have a valid contractual charging lien against the $27,468.

2. **Retaining Liens**:

The RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 Comment b provides in pertinent part,

> While a broad retaining lien might protect the lawyer's legitimate interest in receiving compensation, drawbacks outweigh that advantage. The lawyer obtains payment by keeping from the client papers and property that the client entrusted to the lawyer in order to gain help. The use of the client's papers against the client is in tension with the fiduciary responsibilities of lawyers. A broad retaining lien could impose pressure on a client disproportionate to the size or validity of the lawyer's fee claim.
>
> . . .

---

[4] At trial Weiss testified,

> In March of 2008 I notified Mrs. Oat that the marshals had returned. The writ of execution against the bank account for Sewer Enterprises, there was 27-odd thousand dollars there and proposed that we use some of the money to fund a foreclosure proceeding with the writ, the precipe, the publication and going to the marshal's sale and use the balance of it to pay Attorney Garten's outstanding —some of Attorney Garten's outstanding fees and some of our outstanding fees.  At that point Mrs. Oat said, absolutely not, give her all the money and that she doesn't authorize to do anything else, and that she wanted me to stop working on her matters….[T]he total amount after the offset for the amount held in escrow that's due and owing is the 313,536.37.

(Trial Tr. at 31)

>   Retaining liens are therefore not recognized under this Section except as authorized by statute or rule and to the extent provided under Subsection (4). Under this Section, lawyers may secure fee payment through a consensual charging lien on the proceeds of a representation (Comments *c-f* hereto) and through contractual security interests in other assets of the client (Comment *h*) and other contractual arrangements such as a prepaid deposit. The lawyer may also withhold from the client documents prepared by the lawyer or at the lawyer's expense that have not been paid for (see Comment *c* hereto).

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 cmt. b (2000).

The RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 comment c (2000), further provides,

>   c. *A lawyer's right to retain unpaid-for documents.* A client who fails to pay for the lawyer's work in preparing particular documents (or in having them prepared at the lawyer's expense, for example by a retained expert) ordinarily is not entitled to receive those documents. Whether a payment was due and whether it was for such a document depend on the contract between the client and the lawyer, as construed from the standpoint of a reasonable client (see §§ 18 & 38).
>
>   . . .
>
>   A lawyer who has not been paid a fee due may normally retain those documents embodying the lawyer's work (see § 46, Comment *e*). Even then, a tribunal is empowered to order production when the client has urgent need. A lawyer must record or deliver to a client for recording an executed operative document, such as a decree or deed, even though the client has not paid for it, when the operative effect of the document would be seriously compromised by the lawyer's retention of it.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 cmt. c (2000).

*Weiss & Garten v. Oat*
Civil No. 2008-123
Judgment
Page 14

Clearly, a retaining lien is recognized under very limited circumstances. The Court is unaware of a Virgin Islands statute recognizing a retaining lien for the circumstances presented here. Accordingly, the Court will not recognize a retaining lien.

### C. Foreclosure of Charging Lien

To the extent foreclosure is warranted on Weiss's lien, the Court must determine the priority of liens. Comment f of the Restatement (Third) of the Law Governing Lawyers § 43 states,

> *f. Priority of charging lien over claims of other persons.* A lawyer's charging lien ordinarily takes priority over security interests that the client grants to other persons after the lawyer's lien has been perfected. According priority to a lawyer's charging lien might raise at least three issues, on which there is mixed authority. One issue is what if any steps, such as filing a financing statement, a lawyer must take to perfect the lawyer's rights against other creditors of the client. A second issue is whether the lawyer's lien takes priority over security interests previously granted by the client. A third issue is whether the lawyer's lien takes priority over security interests such as tax liens that are not granted by the client. This Restatement takes no position on those issues.

Restatement (Third) of the Law Governing Lawyers § 43 cmt. f (2000).

There is no record evidence provided by Weiss, Garten, or Oat as to senior or junior liens on the $27,468 held in Weiss's escrow account.[5] Based on the foregoing, Weiss's lien has priority over any subsequent liens.

---

[5] Ordinarily, an attorney's lien attaches at the commencement of services. *See, e.g., Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb*, 298

## IV. CONCLUSION

For the reasons explained above, the Court will enter judgment in favor of Weiss and Garten on their breach of contract claims. The Court will also enter judgment foreclosing Weiss's charging lien on the $27,468 held in Weiss's escrow account. An appropriate judgment accompanies this memorandum opinion.

                                                          S\_____
                                                    **CURTIS V. GÓMEZ**
                                                    **Chief Judge**

---

F.2d 371 (10th Cir. 1962) (applying New Mexico law) ("The lien of an attorney for services rendered in an action relates back to, and takes effect from, the time of the commencement of the services, when it attaches to a judgment, it is superior to the claim of a creditor in whose favor execution has been levied, or to a subsequent attachment . . ."); *Friedman v. Harris*, 158 F.2d 187, 188 (D.C. Cir. 1946) (applying District of Columbia law) ("the lien . . . .relates back and takes effect form the time of the commencement of the suit."); *In re Washington*, 242 F.3d 1320, 1323 (11th Cir. 2001) (applying Florida law) ("Although an attorney's charging lien attaches to a judgment for the client, this equitable lien relates back to the commencement of the services rendered by the attorney on behalf of the client and takes effect from that time."); *Montavon v. U.S.*, 864 F. Supp. 519, 522 (E.D.Va. 1994) (applying Virginia law) ("Under Virginia law, such a lien comes into existence on the making of the contract of employment between the client and attorney but then remains until judgment or recovery is obtained."); *Stair v. Calhoun*, 722 F. Supp.2d 258, 267 (E.D.N.Y. 2010) (applying New York law) ("From the commencement of an action . . . the attorney who appears for a party has a lien upon his client's cause of action[.]").